Haynes, J.
A petition for mandamus has been filed in this court, praying that a writ may issue, requiring the defendant to perform certain acts. The appearance of the auditor has been entered in the case, and demurrer has been filed to this petition. Strictly speaking, in practice, perhaps the demurrer at this point is not the proper remedy. The supreme court, however, has held that the question of the sufficiency of the petition may be raised by the court in deciding whether it will allow a writ to issue. The writ shall not issue unless it shows upon its face that there is a proper ■cause of action. Mr. Niernan states that he was the duly ■elected treasurer of Woodville township, and says Wood-ville township has a large amount of land, containing and producing mineral products, to-wit: oil; that there is drilled, and now in operation in said township, a large number ■of oil wells, producing mineral products, to-wit: oil; and that there will be hereafter, a large number of wells drilled, which, in all probability, will produce a large quantity of ■oil.
Relator further says, that by the provisions of section 2792, Rev. Statutes, as amended January 30, 1891 vol. 88, p.13, Ohio Laws, the board of equalization of Sandusky county assessed on said oil wells, in said township, the sum of $2318.67, as the developments of said oil wells were made, over and above the decennial appraisement of lands upon which oil welte are situated. That the owners, operators and managers of said oil wells, in said township, have long since paid into the treasury of said Sandusky county, Ohio, the said sum of $2318.67, as provided for so as aforsaid in said amended section 2792,and that the said $2318.67, are now in the treasury of said Sandusky county, Ohio.
Relator further says, that by the provisions of an act of the General Assembly, of the state of Ohio, passed April *106 27th, 1896. vol. 92, p. 748, Ohio Laws, which is as follows:
“House Bill, No, 673. An act to provide a road fund in townships where oil wells are located, or may hereafter be located. (Sandusky county.)
“Section 1. Be it enacted by the General Assembly o the state of Ohio, That in all counties , which, by the federal census of 1890, had a population of 30,617, nor more than 30,900, any monies arising from the tax on oil wells,drilled, or hereafter to be drilled, shall be collected by the treasurer of the county as other taxes are, and be returned to the township treasury where such oil wells are located, in any sum not exceeding $2,500 per annum, to be used as a road fund in any such township.
“Section 2, Said fund shall be under the control of the township trustees, and shall be by them expended in maintaining and building roads, as to them seem advisable.
“Section 3. All acts,and parts of acts,in conflict with the provisions of this act, are, as to such conflict, hereby repealed, and this act shall taue effect, and be in force, from and after its passage.”
It is provided that in all counties, which by the federal census of 1890, have a population of 30,617, nor more than 30,900, any money arising from the tax on oil wells, drilled or hereafter to be drilled, shall be collected by the treasurer of the county as other taxes are, and be returned to the township treasurer, where said oil wells are located, in any sum not exceeding twenty-five hundred dollars ($2,500) per annum, to be used as a road fund in any such township.
He then states the population of Sandusky county; and that there is now, under, and by virtue of said last mentioned act of the General Assembly of the state of Ohio, passed April 27th, 1896, to the credit of the treasurer of said Woodville township, Sandusky county, Ohio, the sum of two thousand three hundred and eighteen and 67-100 dollars.
That by reason of the boring and drilling of said wells *107 in said township, the roads have been-cut up and destroyed by hauling thereon engines, boilers and timbers,and it is necessary, in order to place said highways in a secure condition, that said money aforesaid collected be returned to said treasurer, to enable the township trustees to spend the same on the public highways of said township, as provided by section 2, etc.
Relator says he has demanded the return of this money, and it has been refused, and he therefore prays that a writ of mandamus issue commanding said defendant to issue his warrant upon the county treasurer of said county, for the payment of said above named sum.
There is a little trouble in regard to this allegation of the petition, as to the amount of taxes, for the reason that it does not follow the statute. Tt says under section 2792 Rev. Statutes, as amended January 30, 1891,vol. 88, p. 13 Ohio Laws, the board of county commissioners, acting as a board of equalization, assessed on said oil wells, in said township, the sum of $2318,67. If this is literally true, the money has not been properly raised. It has not been raised in pursuance of the statute. We have assumed, and shall assume, in deciding this case, that this money is the amount of taxes that have been levied upon certain values that have been made by the board of equalization of the county upon oil well property. The fact is found in section 2792 Rev. Statutes,a s amended in vol. 88, Ohio Laws p. 13:
“Each separate parcel of real property shall be valued at its value in money, excluding the value of the crops growing thereon; but the price for which such real property would sell at auction, or at forced sale, shall not be taken as the criterion of the true válue, and where the fee of the soil of any tract, or parcel of land, is in any person or persons, natural or artificial, and the right to any minerals therein in another, or others, the same shall be valued and listed agreeably to such ownership, in separate entries, specifying the interests listed, and shall be taxed to the parties owning tbe different interests respectively.”
*108 That is to say, the land is returned at its value, and the oil wells are to be listed at their value.
“Provided the assessor shall deduct from the value of any such tracts of land lying outside of municipal corporations, the amount of land occupied and used by a canal, or used as a public highway at the time of such assessment, and if the assessor fails to do so, the county auditor is hereby authorized to make the deductions as herein provided; and provided further, that the annual board of equalization may reduce the mineral value assessed against lands containing or producing petroleum (oil), natural gas, coal, or limestone, fire-clay or other minerals, in proportion as the product of such mineral has diminished, “ (now comes the clause upon which it says the board has acted in this matter:) “if such mineral product was considered as a part of the value of said real estate in its previous appraisement for taxation, and annual assessors or boards of equalization may assess such mineral values as developments of its product or existence are made. ”
That is to say, if the productions are increased, the board may increase the amount of the value upon the duplicate. When the assessment is made, it stands the same as the assessment of real estate or other property, and is subject to taxation in the same manner as taxes are levied and assessed upon other property generally. By the laws of Ohio, certain bodies, commencing with officers of the state, assess or fix the rate to be assessed for certain purposes upon taxable property in the state of Ohio. The board of county commissioners may make assessments and fix the rate of taxation that is to be upon the property in the county;.that is to say, 'upon the value that is placed upon the duplicate, and these amounts are fixed for exclusive purposes, for purposes of the state, for purposes of school, county and township purposes, and for the various purposes for which money is raised by taxation, and we assume under this allegation, that inasmuch as the *109 money has been raised in accordance with this section of the statutes,that it has been raised by the board of equalization, fixing the value of these oil wells, and then the county auditor assesses upon such values the various rates of taxation, which he is authorized to assess under the laws, which rates have been fixed by the various public authorities. So this sum of 12318.67 represents, in fact, the moneys that have been collected by the treasurer for the various purposes for which money is raised in the state, and that the aggregate amount is 12318.67.
The constitution of the state of Ohio under article 12, provides for levying taxes in the state. Section 5 of that article, reads as follows:
“No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same to which only it shall be applied.”
Now, this money being raised and paid into the treasury, under the general laws of the state, is to be paid out to the various treasurers and officers for the various purposes for which it has been assessed and collected. But this local law comes in and provides that this money, which was so raised for specific and definite purposes, shall be diverted from these purposes, and shall be paid over to the treasurer of the township up to a certain amount,and shall be used by them exclusively for the purpose of repairing roads, for road purposes; and the question is, whether this act is in violation of the constitution of the state of Ohio.
We have given this matter careful attention, because it is a question of importance to the townships interested. We are unable to see how we can sustain this act. Clearly it requires the treasurer to take these moneys that are raised for other specific purposes, and which the constitution especially says shall be applied to no other purposes whatever, and applies them to another purpose, to-wit: repairing of roads in different townships; and it seems to us Oo clear that tha *110 is a violation of this clause of the constitution that there can be no question whatever, that the law should be declared to be unconstitutional.-
We have been cited to a case that has been decided in Allen county. In that case, an act of the legislature attempted to authorize the use of certain moneys that were collected for road purposes in the limits of the city of Lima. The case came up before the third circuit court, in Allen county, and they held that the law was unconstitutional. We are cited in the Law Bulletin, to the fact that the case was taken to the supreme court of the state, and by the supreme court reversed without any report whatever, so that the decision of that court throws no light whatever upon the correctness of the decision as to the law being contrary to the constitution, as we think, and for the reason that the case might have been decided upon ether points without discussing the constitutionality of the' question in any manner or form. We can hardly conceive that the supreme court of Ohio, if passing upon the constitutionality of a law of this kind, would have made’a decision of the case without full report, except it had been decided upon some collateral point- It appears- there was a tax of 3-J mills in Allen county for road purposes. It is said that it was intended to be levied under section 4919 of the statutes, which provides that where roads have been damaged or destroyed or injured, that in addition to the taxes that may be levied for ordinary road purposes, there might be levied an addition of five mills on the dollar upon all taxable property of the county, to be expended by the commissioners in such manner as might seem to them most advantageous to the interest of the county for the construction, re-construction or repair of such road.or roads. The report says, that the commissioners never found any roads damaged or destroyed so as to render the same unfit for travel. It simply states on the face of the papers, -that there had been a levy of 3-k *111 mills on the dollar in Allen county. The act in question provided that money that was raised on property in the city of Lima, should be expended in the city of Lima, by the city anthorities. We may suppose the case was decided as if the whole tax was raised for general and not specific road purposes, and until the supreme court have made a decision, and published it, stating the questions decided, we do not think we ought to attempt to follow'it as authority upon the question before us, for the reason that I have stated, that it might have been decided upon collateral points. It follows from what I have said, that the writ of mandamus must be refused and the petition dismissed.
Kinney & O'Farrell, Attorneys for Relator.
Geo. W. Whitney, Prosecuting Attorney for Defendant.